IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| SA&H WESTERN HOLDINGS, LLC D/B/A FOX SERVICE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>FOX INDUSTRIES, LLC D/B/A FOX COMMERCIAL SERVICES,<br><br>    Defendant. | Civil Action No. 1:22-cv-519-LY |

**DEFENDANT'S MOTION FOR EXPEDITED DISCOVERY, A BRIEFING SCHEDULE, AND EVIDENTIARY HEARING ON PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION**

COMES NOW Defendant Fox Industries, LLC ("Defendant") by and through its undersigned counsel, and files this Motion for Expedited Discovery and to Set a Briefing Schedule and Hearing on Plaintiff's Preliminary Injunction. By this Motion, Defendant seeks an opportunity to conduct targeted discovery in order to obtain information it needs to prepare an opposition, and which it otherwise cannot access or obtain.

**INTRODUCTION**

Plaintiff's request for a preliminary injunction is fact-intensive: it rests on a Verified Complaint with six accompanying exhibits, as well as a brief attaching four declarations and nearly three dozen separate exhibits totaling more than 200 pages. The pleadings also contain unsubstantiated hearsay and otherwise rely substantially upon information to which Defendant has no ready access nor ability to probe. Thus, much of the information Defendant needs to present a

1

complete picture in opposition to Plaintiff's Motion for a Preliminary Injunction is in the sole possession of Plaintiff, or is in the possession of third parties under neither side's control. Considering this together with the potentially detrimental effects of an injunction, fairness demands that Defendant be afforded a brief period of time in which to conduct expedited discovery prior to filing its opposition to Plaintiff's Motion, with an eye toward providing the Court with a more complete record prior to an evidentiary hearing. A proposed schedule for discovery, briefing, and an evidentiary hearing is set out below.

## GROUNDS FOR REQUESTED RELIEF

### A. Legal Standard

A party may seek expedited discovery under Federal Rules of Civil Procedure 34(b) and 26(d). When assessing whether to grant requests for expedited discovery, Courts in this District and elsewhere in the Fifth Circuit have employed a "good cause" standard:

> In determining whether good cause exists, courts often consider (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [non-propounding party] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.

*Accruent, LLC v. Short*, No. 1:17-CV-858-RP, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017). In other cases involving a pending preliminary injunction, the Fifth Circuit has upheld decisions permitting expedited discovery. *See, e.g.*, *Capital Parks, Inc. v. Se. Advert. & Sales Sys., Inc.*, 30 F.3d 627, 630 (5th Cir. 1994) (affirming district court's grant of expedited discovery and denial of request for temporary injunction); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501 (5th Cir. 1982) (granting preliminary injunction after district court had allowed for expedited discovery). In this context, "[t]he burden of showing good cause is on the party seeking the expedited discovery, and the subject matter related to requests for expedited discovery should be narrowly tailored in

scope." *Id.* at *1 (*quoting St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011).

**B.      Good Cause Exists to Order Targeted Expedited Discovery.**

Defendant seeks expedited discovery into a few key topics with meaningful bearing on Plaintiff's request for injunctive relief.

**1.      The History of Plaintiff's Purported Trademark Rights.**

Priority of rights in the FOX trademark in this case is contested. Plaintiff would have the Court believe it is the sole legitimate heir to all trademark rights associated with a company started in the early 1970s by Curtman Fox and his business partners. There are important gaps in Plaintiff's telling of the story, however, which call into question its claim to ownership of rights that are superior and prior to those of Defendant. Considering the importance of priority of rights in a trademark dispute, this issue merits urgent inquiry prior to an injunction hearing. *See Hana Fin., Inc. v. Hana Bank*, 574 U.S. 418, 419 (2015) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users.").

Both Plaintiff and Defendant trace their origins to a company that long existed in the Austin area, which Defendant believes was first incorporated under the name "Fox Service, Inc." Through a series of transactions that are not presently clear, that entity appears to have assigned its rights to a company formed in 2013 under the name Fox Service Company II, LLC, which Plaintiff refers to as "Original Fox" (despite its clearly not being the original Fox entity formed in the 1970s). *See* Decl. of Christopher M. Weimer, and attached Exhibit A, Certificate of Formation of Fox Service Company II, LLC.

3

As stated in its Complaint, Plaintiff purchased a subset of that company's assets, specifically, its "Residential Business," in 2018. Defendant later purchased certain remaining assets of that company in a transaction that closed in November 2020. Thus, each side will be relying on common law trademark rights in this case. The exact contours of each party's common law rights, as well as the chain-of-title to those trademark rights, are core issues on which Defendant needs discovery, as they have a direct bearing on the merits of Plaintiff's claim for injunctive relief.

### 2. The Meaning of "Residential Business."

Plaintiff purchased rights relating to the "Residential Business" of "Original Fox." However, the meaning and scope of such rights are far from clear. As Plaintiff's Complaint alleges, the agreement between Original Fox and Plaintiff stated that such rights were limited to the "Residential Business," defined as being residential services offered to "homeowners and property managers, as currently conducted by [Original Fox]." Compl. ¶14 [Dkt. 1.] Plaintiff apparently relies on a Declaration of a single employee to interpret this defined term and conclude that Defendant should be precluded from providing any services to "apartments, condos, and other multi-family residential properties" as a result of this contractual term. *See* Pl.'s Mot. for Prel. Inj. at 2 and Bagby Decl. at ¶ 6 [Dkt. 5; 5-1.] Given the importance of this issue—to Plaintiff's claims for both trademark infringement and breach of a Noncompetition Agreement— the interpretation of this defined term and its historical application as between the relevant parties warrant further scrutiny through discovery. Defendant believes that Plaintiff, as well as individuals involved in the sale of assets from "Original Fox" to Plaintiff, will be able to provide documents and testimony bearing directly on this question.

### 3. The Status Quo Prior to Commencement of Suit.

Plaintiff does not and cannot dispute that after it purchased rights to the "Residential Business," it coexisted in Central Texas with the entity that sold those rights, which continued to do business under a FOX mark and name offering commercial services. The injunction Plaintiff seeks, if granted, would upset that balance, which existed for four years, since the time assets belonging to the entity Plaintiff calls "Original Fox" were sold piecemeal, first to Plaintiff and then to Defendant. That balance existed not only between Plaintiff's business and "Original Fox," which coexisted in the Central Texas marketplace from February 2018 until November 2020, but also between Plaintiff and Defendant, which purchased the remaining assets of so-called "Original Fox" to conduct its commercial business in November 2020. Although Plaintiff seeks to paint a picture of changed circumstances, Defendant believes discovery would show that the same balance existed at all relevant times, through the filing of suit, such that an injunction would upend the status quo, rather than maintain it.

Because an injunction must seek to maintain the status quo between the parties, a key issue for the Court to determine will be what was the state of affairs prior to Plaintiff's filing suit, or prior to the time at which Plaintiff alleges Defendant's infringement began. As it relates to the time period of February 2018 through November 2020, Defendant does not have access to such information, as Defendant did not yet own any relevant assets: only Plaintiff and non-parties would have such information. Even for subsequent periods, Plaintiff possesses information relevant to the injunction hearing about the status quo between the parties that Defendant would not have access to. For those reasons, Defendant requires discovery into the status quo as it existed in the years leading up to the filing of suit by Plaintiff.

### 4. Allegations of Confusion.

Many of the facts alleged in Plaintiff's Declarations rest solely on the say-so of Plaintiff's employees, or otherwise on materials, documents and information sent by third parties and presently accessible only to Plaintiff. Moreover, Plaintiff's allegations concerning alleged instances of actual consumer confusion rely on hearsay, or hearsay upon hearsay, which at a minimum warrant further investigation through discovery. *See, e.g.*, Decl. of Shelly Lyles, [Dkt. 5-2 at 1–6, ¶¶ 15–24 (compiling instances of alleged confusion relayed by others)]. Defendant should be granted expedited discovery to probe and understand the alleged instances of confusion on which Plaintiff relies so heavily in its Motion.

### C. Proposed Schedule for Discovery, Briefing, and Hearing

Defendant seeks a period totaling two months from the date of this filing to exchange written discovery, depose declarants or witnesses, and present its opposition in advance, all culminating in an evidentiary hearing to be conducted at the Court's earliest opportunity. Defendant proposes the following schedule.

> By July 1, 2022 – Parties to file a joint motion for a protective order to protect the disclosure of confidential documents and information.
>
> By July 8, 2022– Parties to conduct a Rule 26(f) conference and to serve initial disclosures and written discovery specifically limited to the allegations set forth in Plaintiff's Motion for Preliminary Injunction.
>
> By July 29, 2022 – Parties to respond to written discovery, including the production of responsive non-privileged documents.
>
> By August 12, 2022 – Parties to take depositions limited in scope to allegations pertinent to the preliminary injunction of up to 5 party witnesses, as well as additional non-party witnesses if desired.
>
> By August 22, 2022 – Defendant to file its opposition to the Motion for Preliminary Injunction.

> On or after August 29, 2022 – The Court to set an evidentiary hearing on Plaintiff's Motion for Preliminary Injunction at its earliest opportunity.

In proposing this schedule, Defendant has endeavored to offer the shortest time frame it believes will reasonably allow for the development of necessary evidence through discovery. Although it may be beneficial, the proposal does not build in extra time to account for the likely need for discovery from non-parties pursuant to Rule 45 nor for the potential unavailability of certain witnesses and key personnel for both parties and non-parties during the summer, which could present obstacles. Good cause exists to grant the requested discovery in large part because a preliminary injunction is pending, but also because the topics on which Defendant seeks discovery are narrow: limited to issues with a direct bearing on the need for injunctive relief.

**D.   Conclusion**

The stakes of an injunction are high. If granted, Plaintiff's proposed injunction could prevent Defendant from continuing to serve longstanding customers of the commercial division, the rights to which Defendant legitimately purchased in an arms-length transaction. Considering these high stakes, Defendant seeks leave for discovery and additional time for briefing to ensure it can adequately present its side of the story to the Court.

**CERTIFICATE OF CONFERENCE**

On June 20 and 21, 2022, I conferred with counsel for Plaintiff concerning the relief sought in this Motion. Specifically, I stated Defendant desired to seek expedited discovery and additional time to respond to Plaintiff's Motion for Preliminary Injunction. I inquired whether Plaintiff's counsel wished to join in an advisory call to the Court seeking to institute a briefing schedule to allow for expedited discovery and a subsequent response date. I was advised that Plaintiff opposes any efforts to enlarge Defendant's time to respond to Plaintiff's Motion for Preliminary Injunction and/or to seek discovery in connection therewith.

Dated: June 23, 2022

                       Respectfully submitted,

By: */s/ Christopher M. Weimer*
Christopher M. Weimer
TX State Bar No. 24061894
David E. Armendariz
TX State Bar No. 24082636
Pirkey Barber PLLC
1801 East 6th Street, Suite 300
Austin, Texas 78702
(737) 443-8793 (telephone)
(512) 322-5201 (facsimile)
*cweimer@pirkeybarber.com*
*darmendariz@pirkeybarber.com*

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MOTION FOR EXPEDITED DISCOVERY AND TO SET A BRIEFING SCHEDULE AND HEARING FOR PRELIMINARY INJUNCTION was served by electronic service on June 23, 2022, upon the following:

| | |
|---|---|
| Kirby Cronin<br>FERGUSON BRASWELL FRASER KUBASTA PC<br>4301 Westbank Drive<br>Building B, Suite 270<br>Austin, Texas 78746<br>(512) 703-1400 (phone)<br>kcronin@fbfk.law | Mark S. VanderBroek<br>Shaniqua Singleton<br>Nelson Mullins Riley & Scarborough LLP<br>Atlantic Station / 201 17th Street, NW / Suite 1700<br>Atlanta, GA 30363<br>(404) 322-6000 (phone)<br>(404) 322-6050 (facsimile)<br>mark.vanderbroek@nelsonmullins.com |
| John M. Cone<br>FERGUSON BRASWELL FRASER KUBASTA P.C.<br>2500 Dallas Parkway, Suite 600<br>Plano, Texas 75093<br>(972) 378-9111 (phone)<br>(972) 378-9115 (facsimile)<br>jcone@fbfk.law | Ashley B. Summer<br>Nelson Mullins Riley & Scarborough LLP<br>280 Park Avenue, 15th Floor West<br>New York, New York 10017<br>(646) 428-2636 (phone)<br>(803) 255-9831 (facsimile)<br>ashley.summer@nelsonmullins.com |

                                          */s/ Christopher M. Weimer*
                                          Christopher M. Weimer